UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

SIMON STARKS,

               Petitioner,                   Case No. 1:17-cv-399

v.                                      Honorable Paul L. Maloney

SHANE JACKSON,

               Respondent.

_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Simon Starks is incarcerated with the Michigan Department of Corrections at the Carson City Correctional Facility. On February 18, 2014, a Berrien County Circuit Court jury found Petitioner guilty of armed robbery, MICH. COMP. LAWS § 750.529, and felony firearm, MICH. COMP. LAWS § 750.227b. On March 24, 2014, the court imposed sentences of eleven to twenty years for the armed robbery conviction, consecutive to two years for the felony firearm conviction.

On April 27, 2017, Petitioner filed his habeas corpus petition raising three grounds for relief, as follows:

    I.      I.      Insufficient evidence of guilt.

    II.     Prosecutor's actions denied defendant a fair trial and his due process rights under the Michigan and federal constitutions.

    II.    III.    Defendant received ineffective assistance of counsel.

(Am. Pet., ECF No. 4, PageID.91-94.)  Respondent has filed an answer to the petition (ECF No. 11), stating that the grounds should be denied because they are without merit or procedurally defaulted.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that all grounds are without merit.  Accordingly, I recommend that the petition be denied.

**Discussion**

### I.    Factual allegations

On November 1, 2013, at about 6:45 p.m., Daniel Beshires and his wife Tabitha arrived in their minivan at a church at the corner of Highland Avenue and Seeley Street in Benton Harbor, Michigan.  (Trial Tr. I, ECF No. 12-6, PageID.325-327.) They were there to look at a 1992 or 1993 full-sized Chevrolet Blazer that had been advertised on Craigslist.  (*Id.*)  Mr. Beshires had communicated with the seller by telephone.  (*Id.*, PageID.330-332.)  He had negotiated a price of $600.00.  (*Id.*, PageID.332.)  They were going to meet at the church at 7:00 p.m. to consummate the transaction.  (*Id.*, PageID.331.)

Mr. Beshires waited in the parking lot.  (*Id.*, PageID.334-335.)  He continued to communicate with the seller by telephone.  (*Id.*)  After waiting about thirty minutes, Mr. Beshires pulled out of the parking lot.  (*Id.*)  As he was leaving, a man walked up and asked if Mr. Beshires was there to buy the Blazer.  (*Id.*)

Mr. Beshires drove around the church, back to the Blazer.  ((*Id.*, PageID.338.) He exited his minivan to evaluate the Blazer.  (*Id.*, PageID.339.)  The seller attempted

to start the vehicle.  (*Id.*, PageID.339-340.)  It would not start.  (*Id.*)  The seller hit the lever to release the hood.  (*Id.*)  As Mr. Beshires opened the hood, the seller pulled a handgun and another person, Petitioner, approached with a handgun as well.  (*Id.*, 344-348.)  They demanded his money.  (*Id.*)  Mr. Beshires yielded his wallet to Petitioner.  (*Id.*)  The robbers told Mr. and Mrs. Beshires to leave; accordingly, he and his wife fled in the minivan.  (*Id.*)

Petitioner testified that he was not at that location on November 1, 2013. (Trial Tr. II, ECF No. 12-7, PageID.431-445.)  He testified that he was at his girlfriend's house the entire afternoon and evening that day.  (*Id.*)  Petitioner's girlfriend confirmed his account.  (*Id.*, PageID.414-430.)

The prosecutor presented one rebuttal witness: a police officer who had interviewed Petitioner twenty days after the incident.   (*Id.*, PageID.446-452.) Petitioner told the officer that he was traveling back and forth between Kalamazoo, Michigan, and South Bend, Indiana, on November 1, 2013. (*Id.*)

The jury deliberated for about an hour before returning its verdict.  (*Id.*, PageID.488.)

Petitioner, with the assistance of counsel, appealed his convictions to the Michigan Court of Appeals raising the same three issues he raises in his habeas petition.  By unpublished opinion issued September 22, 2015, the court of appeals affirmed the trial court.  (Mich. Ct. App. Op., ECF No. 12-10, PageID.516-521.) Petitioner then filed a pro per application for leave to appeal in the Michigan Supreme Court, again raising the same three issues he raises here.  That court denied leave by

order entered May 2, 2016.  (Mich. Ord., ECF No. 12-11, PageID.647.)  Petitioner then timely filed the instant petition.

## II.    AEDPA standard

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655.  Moreover, "clearly established Federal law" does not include

decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1);

*Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656.  This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III.    Sufficiency of the evidence

Petitioner contends that the evidence offered by the prosecution was lacking in two ways: first, there was no DNA, fingerprints, or other physical evidence linking Petitioner to the crime or crime scene; and second, the victims' claims that they could identify the robbers even though the robbers wore bandanas as masks is wholly incredible.  (Am. Pet., ECF No. 4, PageID.91.)

A Section 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  *Id.*  Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993).  Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as

established by state law.  *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.  Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "'the law commands deference at two levels in this case:  First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan [Court of Appeals'] consideration of the trier-of-fact's verdict, as dictated by AEDPA.'" *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (*en banc*) (quoting *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008)). This standard erects "a nearly insurmountable hurdle" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds.  *Id*. at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

The Michigan Court of Appeals applied the *Jackson* standard when it rejected Petitioner's challenge to the sufficiency of the evidence:

> In reviewing the sufficiency of the evidence, this Court must view the evidence – whether direct or circumstantial – in a light most favorable to the prosecutor and determine whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt.  *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012); *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002).  A jury, and not an appellate court, observes the witnesses and listens to their testimony; therefore, an appellate court must not interfere with the jury's role in assessing the weight of the evidence and the credibility of the witnesses.  *People v Wolfe*, 440 Mich 508, 514515; 489

> NW2d 748 (1992).  Circumstantial evidence and the
> reasonable inferences that arise from such evidence can
> constitute satisfactory proof of the elements of the crime.
> *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999).
> The prosecution need not negate every reasonable theory
> of innocence, but need only prove the elements of the crime
> in the face of whatever contradictory evidence is provided
> by the defendant.  *People v Nowack*, 462 Mich 392, 400; 614
> NW2d 78 (2000).  We resolve all conflicts in the evidence in
> favor of the prosecution.  *People v Kanaan*, 278 Mich App
> 594, 619; 751 NW2d 57 (2008).

(Mich. Ct. App. Op., ECF No. 12-10, PageID.517.)  Although the court of appeals

relied on state authorities, those authorities ultimately are founded in *Jackson v.*

*Virginia.  See, e.g., People v. Wolfe*, 489 N.W.2d 748, 751 (1992) ("This standard was

articulated by the United States Supreme Court in *Jackson v. Virginia, . . .* and has

been applied regularly in the courts of this state.  [citations omitted].").  Thus, it

cannot be said that the state courts applied the wrong standard.

The state appellate court also applied the standard properly:

> To establish the crime of armed robbery under MCL
> 750.529, the prosecution must prove beyond a reasonable
> doubt that the defendant, in the course of committing a
> larceny of money or property, used force or violence
> against, assaulted, or placed in fear the complainant, while
> possessing a dangerous weapon, possessing an article used
> or fashioned in a manner to give the appearance of being a
> dangerous weapon, or representing that he or she
> possessed a dangerous weapon.  *People v Chambers*, 277
> Mich App 1, 7-8; 742 NW2d 610 (2007); M Crim JI 18.1.
> Further, "it is well settled that identity is an element of
> every offense." *People v Yost*, 278 Mich App 341, 356; 749
> NW2d 753 (2008).  A witness's positive identification may
> establish sufficient evidence of identity.  *People v Davis*,
> 241 Mich App 697, 700; 617 NW2d 381 (2000).  With
> respect to the armed robbery, defendant does not challenge
> whether there was sufficient evidence to show that an
> armed robbery occurred; rather, defendant only argues

that there was insufficient evidence showing that he was one of the perpetrators. Defendant's identity argument is equally applicable to the felony-firearm conviction.

Here, both victims identified defendant as one of the individuals who committed the armed robbery. The husband testified that he was "100 percent positive" that defendant was the person who took his wallet. The wife testified that she had "no doubt" about her identification of defendant. Further, although defendant wore a bandana that covered part of his face, the wife asserted that she was able to see defendant from the nose up. She claimed that she was able to identify defendant on the basis of his hair, the shape of his eyes, and his nose. The couple both testified that defendant wielded a gun. Viewing the evidence in a light most favorable to the prosecution, resolving all conflicts in the evidence in favor of the prosecution, and deferring to the jury's assessment of the weight of the evidence and the credibility of the witnesses, we conclude that a rational juror could find that the prosecution proved beyond a reasonable doubt that defendant committed the offenses of armed robbery and felony-firearm. All of defendant's arguments on appeal are ultimately predicated on the weight of the evidence, conflicts in the evidence, and/or the credibility of witnesses, none of which warrant reversal. *Wolfe*, 440 Mich at 514-515; *Kanaan*, 278 Mich App at 619. The testimony against defendant did not contradict or defy physical facts and realities or laws of science, nor was the testimony patently incredible or inherently implausible. *See People v Lemmon*, 456 Mich 625, 643-644; 576 NW2d 129 (1998) (addressing a great-weight-of-the-evidence argument). Reversal is unwarranted.

(Mich. Ct. App. Op., ECF No. 12-10, PageID.517-518.)

Where an eyewitness's testimony, if credited, establishes the essential elements of the offense, the *Jackson* standard is satisfied. *Tibbs v. Florida*, 457 U.S. 31, 46 n.21 (1982) ("Nadeau provided eyewitness testimony to the crimes. If the jury believed her story, the State's presentation was more than sufficient to satisfy due

9

process."); *see also Couch v. Jabe*, No. 92-1269, 1992 WL 340397, *1 (6th Cir. Nov. 19, 1992) ("In this case, the testimony of the alleged eyewitness, if believed, was sufficient to support the conviction.").   Petitioner's contention that the Beshires' testimony is insufficient depends on his conclusion that it is not credible.   Petitioner, therefore, asks this Court to do that which it cannot: assess the credibility of witnesses as part of the *Jackson* analysis.   *Herrera*, 506 U.S. at 401-02.   Moreover, *Jackson* does not require the presentation of forensic evidence such as DNA or fingerprints.   *Sullivan v. Bruce*, 44 F. App'x 913, 916 (10th Cir. 2002) ("The constitution does not require [a] . . . conviction to be supported by DNA evidence."); *Perkins v. Warden, Madison Corr. Inst.*, No. 3:14-cv-322, 2015 WL 1276450, *7 (S.D. Ohio, Mar. 19, 2015) ("There is no requirement in the law of presenting forensic evidence such as Perkins' recovered DNA or fingerprints . . . . ").

Petitioner has failed to show that the Michigan Court of Appeals resolution of his sufficiency-of-the-evidence challenge is contrary to, or an unreasonable application of, *Jackson v. Virginia*, the clearly established federal law regarding sufficiency of the evidence.   Accordingly, Petitioner is not entitled to habeas relief.

## IV.    Prosecutorial misconduct

Petitioner identifies three distinct types of prosecutorial misconduct that denied him a fair trial: the prosecutor appealed to the sympathies of the jury by playing the tape of Mrs. Beshires' 911 call; the prosecutor argued facts not of record; and the prosecutor denigrated Petitioner's defense. (Am. Pet., ECF No. 4, PageID.92.)

### A.    Appealing to the jurors' sympathy

For a petitioner to be entitled to habeas relief on the basis of prosecutorial misconduct, the petitioner must demonstrate that the prosecutor's improper conduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).   "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982)).   In evaluating the impact of the prosecutor's misconduct, a court must consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether the claimed misconduct was deliberate or accidental. *See United States v. Young*, 470 U.S. 1, 11-12 (1985).   The court also must consider the strength of the overall proof establishing guilt, whether the conduct was objected to by counsel and whether a curative instruction was given by the court. *See id.* at 12-13; *Darden*, 477 U.S. at 181-82; *Donnelly*, 416 U.S. at 646-47; *Berger v. United States*, 295 U.S. 78, 84-85 (1935).

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)).   Indeed, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (quoting *Donnelly*, 416 U.S. at 645).   Thus, in order to obtain

11

habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 567 U.S. 37, 47 (2012) (internal quotation omitted).

It is certainly fair for the prosecutor to comment on the evidence; indeed, the prosecutor must be afforded considerable leeway. *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000) ("Prosecutors 'must be given leeway to argue reasonable inferences from the evidence.'") (quoting *United States v. Collins*, 78 F.3d 1021, 1040 (6th Cir. 1996)). On the other hand, it is certainly unfair for the prosecutor to seek to inflame the passions of the jury. *Viereck v. United States,* 318 U.S. 236, 247-48 (1943) (Court held it was improper for prosecutor to appeal to the passion and prejudice of the jury); *Johnson v. Bell*, 525 F.3d 466, 484 (6th Cir. 2008) ("[A] prosecutor illicitly incites the passions and prejudices of the jury when he calls on the jury's emotions and fears—rather than the evidence—to decide a case."); *Caldwell v. Russell*, 181 F.3d 731, 737 (6th Cir.1999), *abrogated on other grounds, Mackey v. Dutton*, 217 F.3d 399, 406 (6th Cir. 2000) ("[The prosecutor] exceeds the legitimate advocate's role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof."); *United States v. Solivan*, 937 F.2d 1146, 1151 (6th Cir. 1991) (court held prosecutor may not make arguments "calculated to incite the passions and prejudices of the jurors . . . . ").

12

Petitioner contends that the prosecutor sought to invoke the sympathy of the jury when she read from the transcript of, and then played, the recording of Mrs. Beshires' frantic 911 call.    The Michigan Court of Appeals rejected Petitioner's contention:

> Despite defendant's argument to the contrary, we first hold that the prosecutor did not improperly appeal to the jury for sympathy by simply reading or playing a portion of the wife's 911 call at the beginning of the prosecutor's opening statement, followed by a recitation of the facts that the prosecutor intended to prove based on the anticipated evidence. *People v Unger*, 278 Mich App 210, 237; 749 NW2d 272 (2008).  Said portion of the 911 call primarily explained the events that had just unfolded, as ultimately testified to by the victims.  In fact, a CD of the 911 call was later admitted into evidence and played without objection. Thus, any assumed misconduct or error in the prosecutor's opening statement was harmless and did not affect defendant's substantial rights.  There was no error and no prejudice.

(Mich. Ct. App. Op., ECF No. 12-10, PageID.518-519.)

Essentially, the court of appeals determined that the prosecutor did nothing more than comment on evidence that was ultimately admitted at trial.   That determination is well-supported in the record. During her opening, the prosecutor did nothing more than recite statements Mrs. Beshires made during the telephone call. All of the statements were admitted into evidence when the recording of the call was played for the jury.  To simply recount evidence properly admitted is the epitome of fair comment on the evidence.  The state court's determination that such comment does not rise to the level of prosecutorial misconduct is entirely consistent with clearly established federal law.

B.    Arguing facts not in evidence

13

A prosecutor is not limited to simply recounting the evidence during closing argument.  She may also argue reasonable inferences from the evidence.  *Byrd*, 209 F.3d at 535.  Nonetheless, it is unquestionably improper for a prosecutor to argue facts not in evidence.  *Abela v. Martin*, 380 F.3d 915, 929 (6th Cir. 2004) (citing *Berger*, 295 U.S. at 78).

Petitioner claims the prosecutor overstepped the bounds of propriety when she argued:

1.    Petitioner knew the area where the robbery occurred, the alleys, the houses, the neighborhood, and the people well.

2.    The gun used in the robbery could have been easily hidden in the area.

3.    It is easy to remember the truth, but hard to repeat lies.

4.    Mr. and Mrs. Beshires would remember the faces involved because having guns pointed at you or your spouse is traumatic.

5.    Because Petitioner's alibi witness could not remember what happened on a specific date six weeks after the robbery, it called into question her memory of the events of the date of the robbery.

(Pet'r's Br. on Appeal, ECF No. 12-10, PageID.597-598.)

The Michigan Court of Appeals gave Petitioner's challenges short shrift: "We have carefully reviewed each of the prosecutor's remarks cited by defendant and conclude that they were either directly based on the evidence admitted during the trial or based on reasonable inferences arising from the evidence."  (Mich. Ct. App. Op., ECF No. 12-10, PageID.519.)  There is no question that the state court applied the correct standard when evaluating the propriety of the prosecutor's remarks.

1.    Petitioner's familiarity with the area

14

The argument to which Petitioner objects, in context, is as follows:

> And if that's not enough, ladies and gentlemen, the defendant got up here, and, of course, after having Miss Pollard come up here and testify that he was with her, he can't come up here and say that he was anywhere near that intersection of Seeley and Highland because that would blow that alibi completely out of the water.  But what he did acknowledge to you, ladies and gentlemen, is that he knows this area, he knows the intersections of Highland and McCord and Seeley, and not only does he know that because he's a resident of the area, but he knows that because he takes that way to go to his, what he identified as his baby momma's house or the woman with – by-with – by whom he has another child 'cause she lives south of that on Vineyard.  And on top of that, ladies and gentlemen, what he tells you is that he actually hangs out at one of those houses, right there.  One two.  Two houses down from this church. He knows this area well.  He's been to this area.  And, in fact, ladies and gentlemen, I would submit to you that he has, cased, this area out.  He knows all the alleys.   He knows all the houses.   He knows the neighborhood.  He knows the people.  So does it surprise you, ladies and gentlemen, that 5-10 minutes after the robbery that he's nowhere to be found?  It shouldn't.  He knows where he's going.  He knows where he's to hide himself at.

(Trial Tr. II, ECF No. 12-7, PageID.459-460.)   The prosecutor's argument finds support in the record.

Petitioner stated he was familiar with the area of Highland and Seeley, specifically familiar with that intersection.  (*Id*., PageID.435.) Petitioner testified the intersection was on the route he walked from his grandmother's house to his baby-momma's house.  (*Id*.)  Petitioner stated he had walked that way quite a few times.  (*Id*., PageID.436.)  Moreover, Petitioner stated he had been at his friend's house, just down from the church, seven or eight times.   (*Id*., PageID.437.)   Nonetheless, Petitioner claimed he had never paid attention to the area.  (*Id*., PageID.438.)

15

In light of the Petitioner's professed contact with the area, it is not unreasonable to invite the inference that Petitioner knew his way around. The court of appeals determination that such an argument was permissible is entirely consistent with clearly established federal law. It is certainly not wrong "beyond any possibility of fairminded disagreement[,]" *Parker*, 567 U.S. at 47 (internal quotation omitted); therefore, Petitioner is not entitled to habeas relief.

2.     Easy concealment of the gun in the area

After the prosecutor argued Petitioner was familiar with the area, she continued: "And can you imagine – Look at those houses, look at all those bushes, look at all that property, that area, can you imagine that it's difficult to hide a gun – to stash a gun? Not really." (Trial Tr. II, ECF No. 12-7, PageID.460.) The prosecutor introduced six aerial images of the area where the crime occurred. (Trial Tr. I, ECF No. 12-6, PageID.249.) The images would have provided the jury a foundation to draw the inferences regarding the available cover. Moreover, Officer Steve Bobo also provided testimony regarding the nature of the area surrounding the church. (Trial Tr. II, ECF No. 12-7, PageID.406-411.) Officer Bobo also testified that a handgun similar to handguns identified by the victims would be easily concealed. (*Id.*, PageID.412.)

It is not unreasonable to invite the inference that a handgun could be easily concealed in an area that offered an abundance of cover. The court of appeals determination that such an argument was permissible is entirely consistent with clearly established federal law. It is certainly not wrong "beyond any possibility of

fairminded disagreement[,]" *Parker*, 567 U.S. at 47 (internal quotation omitted); therefore, Petitioner is not entitled to habeas relief.

3.    Credible witnesses provided consistent and detailed testimony

The third statement to which Petitioner objects brings to mind a quotation often attributed to Mark Twain: "If you tell the truth you don't have to remember anything." *Amfosakyi v. Frito Lay*, No. 1:11-cv-651, 2011 WL 7560658 at *1 (M.D. Pa., Dec. 22, 2011). The prosecutor's argument delved a little deeper:

> What I would submit to you, ladies and gentlemen, is that everything they told you was extremely detailed, extremely detailed. And I know that Mr. Beshires said that this happened in a 90-second span, but how long did it take him to tell you about that, what, about a half an hour? Why? Because it's very detailed. Because that's what happened. Is it e – It's easy to remember the truth, it is hard to repeat lies. That's why lies are extremely inconsistent with each other. That's why lies change, over time, because it is hard to remember a lie. And that's, frankly, why they're so vague, because it is easier to remember a vague statement than it is a detailed statement, when it didn't happen.

(Trial Tr. II, ECF No. 12-7, PageID.465-466.) That is not so different from the trial court's instructions: "There is no fixed set of rules for judging whether you believe a witness, but it may help you to think about these questions . . . Did the witness seem to have a good memory." (Trial Tr. II, ECF No. 12-7, PageID.478.) In short, the prosecutor was inviting the jury to draw the inference that Mr. and Mrs. Beshires were credible based on the significant detail provided in their testimony. The court of appeals determination that such an argument was permissible is entirely consistent with clearly established federal law. It is certainly not wrong "beyond any

17

possibility of fairminded disagreement[,]" *Parker*, 567 U.S. at 47 (internal quotation

omitted); therefore, Petitioner is not entitled to habeas relief.

        4.      The victims' focus on the persons holding them at gunpoint

The prosecutor argued:

> Mr. Beshires' per – perception is: being held up at
> gunpoint, being threatened for his life – give me all your
> money, give me your wallet – his focus is right here on the
> two people that have him at gunpoint.   That is his
> perception.   That is his view.   Mrs. Beshires' view is: I'm
> sitting in my van, I'm looking over and I'm seeing my
> husband get robbed at gunpoint.

(Trial Tr. II, ECF No. 12-7, PageID.464.)   The prosecutor raised the issue again in

rebuttal:

> He only looked at that guy for 90 seconds.   But let me tell
> you, ladies and gentlemen, he was very – when he looked
> at that – those two males for 90, long, seconds, staring at
> the end of – well, basically two guns, certainly Mr. Beshires
> is gonna remember that face . . . .   Mrs. Beshires . . . Do you
> think that she's not gonna get a good look at his face, he –
> he's not gonna remember the face of the armed robber that
> stole her husband's wallet, that stole his money, that stole
> his sentimental items inside of his wallet?   You can bet
> she's gonna remember his face.

(*Id.*, PageID.470-471.)

Mr. Beshires testified that he was looking at the robbers face-to-face during

the entire encounter, even when he turned to permit Petitioner to remove the wallet

from his back pocket.  (Trial Tr. I, ECF No. 12-6, PageID.346-347, 351-352, 361-362.)

He specifically testified that he turned to face the robbers as soon as they drew their

guns because, in that circumstance, you "want[] to see what's going on."   (*Id.*,

PageID.346-347.)   There was testimony in the record to support the prosecutor's

18

argument.  Moreover, it is not unreasonable to invite the inference that one would pay close attention to a person who is pointing a gun and threatening harm.

The court of appeals determination that such an argument was permissible is entirely consistent with clearly established federal law.  It is certainly not wrong "beyond any possibility of fairminded disagreement[,]" *Parker*, 567 U.S. at 47 (internal quotation omitted); therefore, Petitioner is not entitled to habeas relief.

> 5. The alibi witness's failure of memory with respect to a similar incident calls into question her memory of the day of the crime

The prosecutor asked the alibi witness what she had done on a particular day in mid-December, 2013.  (Trial Tr. II, ECF No. 12-7, PageID.421-422.)  She could not recall.  (*Id*.)  When the prosecutor told her she had visited Petitioner at the jail that day, she did not dispute that, she simply could not recall.  (*Id*., PageID.423.)  The prosecutor then reviewed with the alibi witness that she vividly recalled spending time with Petitioner six weeks earlier on November 1, 2013, the day of the crime.  (*Id*., PageID.423-424.)  The prosecutor also tripped the alibi witness up later during the cross-examination by referencing November 2 instead of November 1.  (*Id*., PageID.427-428.)  The alibi witness then indicated that it was November 2 when she spent the day with Petitioner.  (*Id*., PageID.428.)  Finally, she acknowledged that she did not know the date the robbery occurred.  (*Id*.)

During closing argument, the prosecutor attacked the alibi witness's credibility based on her confusion regarding the dates and her inability to recall time spent with Petitioner that was several weeks more recent than the date of the robbery.  (*Id*.,

PageID.457-459.)  The idea that memory fades as time passes is hardly novel.  *See, e.g., United States v. Owens*, 484 U.S. 554, 562 (1988) ("'[a]s time goes by, a witness' memory will fade . . . .'"); *Oneida Cnty, N.Y. v. Oneida Indian Nation of New York State*, 470 U.S. 226, 266 n.16 (1985) ("'No human transactions are unaffected by time . . . peculiarly matters which rest in memory . . . which consequently fade with the lapse of time . . . .'") (dissenting opinion); *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 118 n.13 (1980) ("[A]s time passes memories fade . . . ."). A corollary to that principle might be that one would have better recall of recent events than older events.  It is certainly not unreasonable to invite that inference.

The court of appeals determination that such an argument was permissible is entirely consistent with clearly established federal law.  It is certainly not wrong "beyond any possibility of fairminded disagreement[,]" *Parker*, 567 U.S. at 47 (internal quotation omitted); therefore, Petitioner is not entitled to habeas relief.

## C.   Denigrating the defense

Petitioner claims that the prosecutor rendered the trial unfair by denigrating the defense.  A prosecutor is free to argue from the evidence that certain defense witnesses are lying, but may not denigrate the defense or defense counsel.  *See Hanna v. Price*, 245 F. App'x 538, 545-46 (6th Cir. 2007); *Bates v. Bell*, 457 F.3d 501, 525 (6th Cir. 2006).  Not every aspersion cast by a prosecutor upon a defense attorney's presentation of a case requires reversal of the guilty verdict.  *See Young*, 470 U.S. at 11 (stating that "a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be

viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial").

"A prosecutor commenting that the defense is attempting to trick the jury is a permissible means of arguing so long as those comments are not overly excessive or do not impair the search for the truth." *United States v. August*, 984 F.2d 705, 715 (6th Cir. 1992); *see also Brown v. McKee*, 231 F. App'x. 469, 480 (6th Cir. 2007) (a prosecutor's isolated comments in closing argument that the defense was attempting to trick the jury is not an improper disparagement of defense counsel).  The comments of which Petitioner complains here were not as strong as those permitted to stand in *August* or *Brown*.

To create "unfairness" the comments must go further than simple impropriety, they must be flagrant.  *See Henley v. Cason*, 154 F. App'x 445, 447 (6th Cir. 2005).  They must inflame the jury's passion or distract them from determining petitioner's guilt or innocence.  *See Davis v. Burt*, 100 F. App'x. 340, 348 (6th Cir. 2004).  That is a difficult showing where the trial judge typically instructs the jury that the attorneys' arguments, questions, and statements are not evidence.  *Byrd*, 209 F.3d at 533.

Petitioner's principle complaint is that the prosecutor mischaracterized the defense.  The prosecutor cast the dispute as a credibility contest between Mr. and Mrs. Beshires, on the one hand, and Petitioner and his alibi witness on the other.

(Trial Tr. II, ECF No. 12-10, PageID.455, 471-472.)[1]  Petitioner claims his defense was that Mr. and Mrs. Beshires were mistaken.  (*Id*., PageID.467-468.)

Petitioner's secondary complaint centers on the prosecutor's treatment of the alibi witness.  Petitioner contends the prosecutor argued improperly when she claimed the witness needed to know the alibi date to be credible or that the only way the witness could identify the date was because defense counsel included it in his questions.[2]  Petitioner claims his alibi witness knew, and testified unequivocally, that she and Petitioner were together the day after Halloween, even if she did not know the specific calendar date.  (*Id*., PageID.468.)

The Michigan Court of Appeals did not consider the prosecutor's allegedly denigrating comments to be sufficiently flagrant, particularly in light of the court's instruction that such comments were not evidence:

> Defendant also argues that the prosecutor denigrated defendant and the defense theory in several ways.  A prosecutor "must refrain from denigrating a defendant with intemperate and prejudicial remarks."  *People v Bahoda*, 448 Mich 261, 283; 531 NW2d 659 (1995).  Here, we have reviewed the alleged instances of denigration and find that the prosecutor was permissibly attacking the

---

[1] Specifically, the prosecutor argued: "[Credibility] is what this case is about, ladies and gentlemen; because, quite honestly, it comes down to Mr. and Mrs. Beshires' word against this defendant's word."  (Trial Tr. II, ECF No. 12-7, PageID.455.)  In rebuttal, the prosecutor was more direct: "Do you believe [the] stories [of Petitioner and his alibi witness] enough . . . to believe Mr. Beshires and Mrs. Beshires are lying to you?"  (*Id*., PageID.472-473.)

[2] The prosecutor argued: "If she's providing an alibi for this defendant, saying that he was at her house, how can she not know what the date is, ladies and gentlemen, how can she not come up right away and say it as . . . November 1st, 2013.  And, in fact, the only time she acknowledged what day it was, was when [defense counsel] said, I wanna take your attention back to November 1st of 2013."  (Trial Tr. II, ECF No. 12-7, PageID.458.)

> defense's alibi theory based on the evidence and reasonable inferences arising therefrom. *Comella*, 296 Mich App at 654; see also *Meissner*, 294 Mich App at 456 (explaining that "[p]rosecutors have discretion on how to argue the facts and reasonable inferences arising therefrom, and are not limited to presenting their arguments in the blandest terms possible"). Further, the jury was instructed that arguments by counsel were not evidence, and, once again, "[j]urors are presumed to follow the instructions of the court." *Meissner*, 294 Mich App at 457.

(Mich. Ct. App. Op., ECF No. 12-10, PageID.519-520.)

On its face, the court of appeals' analysis appears to be entirely consistent with clearly established federal law. Moreover, the court of appeals applied that law reasonably. With respect to Petitioner's primary complaint, Petitioner's argument that he challenged the Beshires' testimony as a mistake, not a lie, is a distinction without a meaningful difference. The Merriam-Webster definition of lie includes: "an untrue or inaccurate statement that may or may not be believed true by the speaker . . . ."[3] Under that definition, if the Beshires' identification of Petitioner as the robber were untrue, it would be a lie, even if Mr. and Mrs. Beshires believed it to be true but were mistaken.

With respect to Petitioner's secondary complaint, the record is clear that the alibi witness testified she did not know the date. The prosecutor invited the jury to infer from her ignorance that her testimony was not credible. The alibi witness also testified that, on Halloween, she had invited Petitioner to come over the next day. (Trial Tr. II, ECF No. 12-7, PageID.417.) Defense counsel invited the jury to infer from that statement that the day of Petitioner's visit to the alibi witness's home and

---

[3] https://www.merriam-webster.com/dictionary/lie (last visited Feb. 2, 2018).

the day of the robbery were the same day.  (*Id.*, PageID.468.)  Both arguments ask the jury to make inferences based on different record testimony.  Neither argument is so incendiary that it could be characterized as impermissibly denigrating the other, even if the inferences invited are mutually exclusive.

Petitioner has failed to demonstrate that the court of appeals, determination rejecting this claim was inconsistent with, or an unreasonable application of, clearly established federal law.  Accordingly, this prosecutorial misconduct claim is without merit.

### III.    Ineffective assistance of counsel

Petitioner claims his trial counsel was ineffective for failing to raise the prosecutorial misconduct issues argued above, failing to present expert testimony on the failings of eyewitness testimony, and for failing to challenge the calculation of the offense variables on factual and constitutional grounds.  In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel:  (1) did counsel's performance fell below an objective standard of reasonableness; and (2) did counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  *Id*. at 687-88.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id*. at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id*. (citing *Michel v. Louisiana*, 350 U.S. 91, 101

(1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential.  *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 134 S. Ct. 10, 13 (2013); *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011).  In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

In considering Petitioner's claims, the Michigan Court of Appeals applied the following standard:

> "To obtain relief for the denial of the effective assistance of counsel, the defendant must show that counsel's performance fell short of . . . [an] objective standard of reasonableness and that, but for counsel's deficient

> performance, there is a reasonable probability that the
> outcome . . . would have been different." [*People v Ackley*,
> 497 Mich 381, 389; 870 NW2d 858, 862-63 (2015)]
> (quotation marks omitted).  A defendant must overcome
> the strong presumption that counsel's performance
> constituted sound trial strategy, but an appellate court is
> not permitted to insulate the review of counsel's
> performance by simply calling it trial strategy – the
> strategy must be sound, with decisions being objectively
> reasonable.  *Id.*  We must determine whether strategic
> choices were made after less than complete investigation
> or if a reasonable decision made an investigation
> unnecessary.  *Id.*

(Mich. Ct. App. Op., ECF No. 12-10, PageID.520.)  The court of appeals cited state

court authority as the source of the standard; however, the case it cited, *People v.*

*Ackley*, expressly relies upon *Strickland*.  *Ackley*, 870 N.W.2d at 862-63.  Accordingly,

there can be no question that the state court applied the correct standard.

### A.    Failure to challenge prosecutorial misconduct

The Michigan Court of Appeals applied the standard to Petitioner's claim that

counsel should have objected to prosecutorial misconduct as follows:

> With respect to the failure to object relative to the alleged
> instances of prosecutorial misconduct or error, because the
> prosecutor's challenged comments and remarks were
> proper, defense counsel was not ineffective, as counsel need
> not raise futile or meritless objections.  *People v Ericksen*,
> 288 Mich App 192, 201; 793 NW2d 120 (2010).  And
> defendant has not established a reasonable probability of a
> different outcome, i.e., the requisite prejudice, assuming
> deficient performance.

(Mich. Ct. App. Op., ECF No. 12-10, PageID.520.)

The court of appeals' determination is certainly consistent with Sixth Circuit

authority.  Counsel's failure to make a frivolous or meritless motion does not

constitute ineffective assistance of counsel.  *See Smith v. Bradshaw*, 591 F.3d 517,

523 (6th Cir. 2010); *O'Hara v. Brigano*, 499 F.3d 492, 506 (6th Cir. 2007); *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2000).    "Omitting meritless arguments is neither professionally unreasonable nor prejudicial."  *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013). The Supreme Court has reiterated the same principle on more than one occasion: "Because the objection upon which his ineffective-assistance-of-counsel claim was premised was meritless, Fretwell could not demonstrate an error entitling him to relief."  *Lafler v. Cooper*, 566 U.S. 156, 167 (2012) (citing *Lockhart v. Fretwell*, 506 U.S.364, (1993)).    Therefore, Petitioner has failed to establish that the Michigan Court of Appeals' determination with regard to his claim is contrary to, or an unreasonable application of clearly established federal law.

      B.    <u>Not calling an expert regarding eyewitness identification</u>

      The Michigan Court of Appeals determined that Petitioner's trial counsel was not ineffective even though he failed to call an expert witness on eyewitness identification:

> In regard to the failure to call an expert witness relative to eyewitness identifications, defense counsel thoroughly cross-examined the victims on the subject of identifying defendant as one of the perpetrators, resulting in some discrepancies and weaknesses in the victims' testimony that were used by counsel as fodder for arguing misidentification.  In *People v Cooper*, 236 Mich App 643, 658; 601 NW2d 409 (1999), this Court rejected a similar argument . . . .

> [A]n expert in the case at bar was not necessary and critical to presenting the theory of misidentification.  Rather, it was reasonable and sound for defense counsel to rely on the discrepancies in the victims' testimony and the nature of the surrounding circumstances (strangers, nighttime,

sudden and stressful situation) in developing the misidentification argument, absent calling an expert on problematic aspects of eyewitness identifications. The jury was certainly capable of grasping the possibility of a misidentification under the circumstances and in light of the testimony even without an expert. Also, given that our review is limited to mistakes apparent on the record, *People v Wilson*, 242 Mich App 350, 352; 619 NW2d 413 (2000), we cannot ascertain whether an expert, on cross-examination, may have provided testimony that somewhat damaged or diminished defendant's theory under the facts, or whether defense counsel explored this avenue and reasonably chose not to call an expert after consultation. We hold that defendant has not shown that counsel's performance fell below an objective standard of reasonableness in failing to call an expert, nor has defendant established the existence of a reasonable probability that calling an expert would have changed the outcome of the proceedings.

(Mich. Ct. App. Op., ECF No. 12-10, PageID.520-521) (footnote omitted). The court of appeals addressed ineffective assistance under both Strickland prongs and determined that defense counsel's performance was not deficient and that Petitioner had failed to demonstrate prejudice.

The court of appeals' determinations on both prongs are reasonable. In *Perkins v. McKee*, 411 F. App'x 822 (6th Cir. 2011), the court rejected the same claim raised by Petitioner:

Also unavailing is Perkins' claim that his attorney should have called an expert witness to testify about the "inherent problems with eyewitness testimony." Perkins Br. at 25. The Constitution does not require defense counsel to pursue every trial strategy imaginable, whether likely to bear fruit or not. *See Engle v. Isaac*, 456 U.S. 107, 134 (1982). No precedent establishes that defense counsel must call an expert witness about the problems with eyewitness testimony in identification cases or risk falling below the minimum requirements of the Sixth

Amendment.  And there is nothing about this case suggesting that such a witness was imperative here.

*Perkins*, 411 F. App'x at 833.  Moreover, the Sixth Circuit has noted: "[T]he hazards of eyewitness identification are within the ordinary knowledge of most lay jurors." *United States v. Langan*, 263 F.3d 613, 623 (6th Cir. 2001).  Against that backdrop, the court of appeals conclusion that counsel had a strategic reason to forego expert testimony regarding the shortcomings of eyewitness identification is eminently reasonable.

The court of appeals' determination that Petitioner had failed to demonstrate prejudice is no less reasonable.  Defense counsel was not stymied by the absence of expert testimony.  He was able to explore factors undermining the identification through cross-examination and argument.  *See Jackson v. Bradshaw*, 681 F.3d 753, 762-763 (6th Cir. 2012) (court held defense counsel's failure to call eyewitness identification expert was not unreasonable where counsel was able to explore weaknesses in identifications in cross-examination and argument).  Moreover, even though, as Petitioner argues, one can anticipate what such an expert might say based on such testimony in other cases, Petitioner's conclusion that he was prejudiced by the absence of such testimony here is sheer speculation.  There is nothing in this record showing what an expert would have said in Petitioner's case. "A defendant cannot simply state that the testimony would have been favorable;

self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (6th Cir. 1991) (footnote omitted).[4]

In sum, Petitioner has failed to show that the court of appeals' determination with regard to this claim is contrary to, or an unreasonable application of, clearly established federal law. Nor has Petitioner demonstrated that the factual determinations upon which the state court's conclusion depends are unreasonable on this record. Accordingly, his claim of ineffective assistance based on counsel's failure to call an expert regarding eyewitness identification is without merit.

C.   Failure to challenge the sentence

Finally, Petitioner challenges his trial counsel's effectiveness because counsel failed to challenge Petitioner's sentence based on: (1) the alleged miscalculation of a couple of offense variables; and (2) the constitutionality of determining the minimum sentence range based on facts found by the judge, rather than the jury. The Michigan Court of Appeals refused to consider the issue because Petitioner had failed to develop it in his brief on appeal. (Mich. Ct. App. Op., ECF No. 12-10, PageID.521, n.2) ("[D]efendant has wholly failed to adequately brief and develop a sentencing argument, thereby waiving the issue."). Petitioner's application for leave to appeal in the Michigan Supreme Court merely referred that court to his court of appeals brief; thus, the defect was not remedied when Petitioner presented his issues to the Michigan Supreme Court.

---

[4] *See also Pillette v. Berghuis*, 408 F. App'x 873, 887 (6th Cir. 2010) ("The salient point is that nobody knows what she would have said. Speculation cannot suffice to establish the requisite prejudice.").

"If a petitioner does not satisfy the procedural requirements for bringing an error to the state court's attention – whether in trial, appellate, or habeas proceedings, as state law may require – procedural default will bar federal review." *Magwood v. Patterson*, 561 U.S. 320, 340 (2010).  To overcome the bar, a petitioner must demonstrate either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice.  *See House v. Bell*, 547 U.S. 518, 536 (2006); *Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Hicks*, 377 F.3d at 551-52.  The miscarriage-of-justice exception only can be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence.  *House*, 547 U.S. at 536.

Because Petitioner's issue relates only to sentencing, he is not making a claim of actual innocence based upon new, reliable evidence.  Accordingly, he cannot avoid the bar based on the second exception: a fundamental miscarriage of justice. Similarly, Petitioner cannot avoid the bar on the first exception, because he has offered no cause for this failure to brief the issue in the state appellate courts.  Even if Petitioner offered an acceptable cause for that failure, however, on this record, he could never establish prejudice.

Petitioner would never be able to show that the result would have been different if his trial counsel had raised the sentencing issues, because the issues were raised in the trial court by appellate counsel, and flatly rejected.  After filing the initial notice of appeal, but before briefing in the court of appeals, Petitioner's

appellate counsel filed a motion in the trial court to correct Petitioner's sentence based on the arguments he contends trial counsel should have raised.  (Mot. & Br., ECF No. 12-10, PageID.532-554.)  The trial court reviewed and rejected the factual challenges.  (Berrien Cir. Ct. Op., ECF No. 12-10, PageID.555-561.)  The trial court reviewed the constitutional challenge; but, was compelled to reject it.  (*Id.*) ("The issues decided by *Herron* are currently pending before the Michigan Supreme Court in *People v. Lockridge* . . .; [n]onetheless . . . *Herron* is still binding upon this Court.").  Indeed, Petitioner's counsel acknowledged that the state of the law in Michigan at that time did not support his argument.  (Mot. Hr'g Tr., ECF No. 12-9, PageID.508) ("I understand the case law is against me . . . .").

The absence of any prejudice prevents Petitioner from overcoming the bar to review raised by his procedural default.  It would also foreclose his ineffective assistance claim if the Court were to address the claim on the merits.  The U.S. Supreme Court has held that federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits.  *See Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."), and *Nobles v. Johnson*, 127 F.3d 409, 423-24 (5th Cir. 1997) (deciding against the petitioner on the merits even though the claim was procedurally defaulted)).  *See also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits,

notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). The standard for finding prejudice to avoid a procedural default bar is the same as the prejudice standard under *Strickland*. *Carter v. Lafler*, No. 17-1409, 2017 WL 4535932, *2 (6th Cir. Aug. 30, 2017) (citing *Ambrose v. Booker*, 684 F.3d 638, 645-49 (6th Cir. 2012)). Thus, Petitioner's sentencing ineffective assistance claim is procedurally defaulted and meritless.

## Certificate of Appealability

Unless a certificate of appealability is issued, an appeal of the denial of a habeas corpus petition may not be taken. 28 U.S.C. § 2253(c)(1). A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467.

I have examined each of Petitioner's claims under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

I find that reasonable jurists would not conclude that this Court's denial of Petitioner's claims is debatable or wrong.

## **Recommended Disposition**

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied.  I further recommend that a certificate of appealability be denied.

Dated:   February 7, 2018             /s/ Phillip J. Green
                                      PHILLIP J. GREEN
                                      United States Magistrate Judge

## **NOTICE TO PARTIES**

ANY OBJECTIONS to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008).  General objections do not suffice.  *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).